Judge Hellerstein

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------x

**'09 CIV 5600**

NEW WORLD BOOKING, INC. and
MENUDO ENTERTAINMENT, LLC

              Plaintiff,

      -against-

NOTICE OF AND PETITION OF
REMOVAL

Docket No.:

OLE, LLC a/k/a OSCAR LLORD
ENTERTAINMENT, LLC; CREATIVE
ICONS, LLC; and OSCAR LLORD,

              Defendants.
------------------------------------------------------x

     Defendants, hereby move this action from the Supreme Court of the State of New York,

County of the Bronx, to the United States District Court for the Southern District of New York,

and respectfully shows this Honorable Court:

     1.     A civil action has been brought against the defendant in the above-captioned

action in Supreme Court of the State of New York, County of the Bronx, entitled

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF THE BRONX

------------------------------------------------------x
NEW WORLD BOOKING, INC. and
MENUDO ENTERTAINMENT, LLC,

     Index No.: 304441-2009

             Plaintiffs,

      -against-

OLE, LLC a/k/a OSCAR LLORD ENTERTAINMENT,
LLC; CREATIVE ICONS, LLC; and OSCAR LLORD

             Defendants.
------------------------------------------------------x

2.      Upon information and belief, a Summons and Complaint [Exhibit "A"] dated May 27, 2009 was filed with the Bronx County Clerk on June 2, 2009. The attorneys for the Defendants accepted service as of June 4, 2009.  No other process, pleadings or order have been served upon the Defendants.

3.      Upon information and belief, at the time of the commencement of this action and the filing of this Notice of Removal:

a)  Plaintiffs are all domiciled in the State of New York, County of the Bronx [see Verified Complaint (basis of venue as Plaintiffs' residence) annexed as Exhibit "A"]; and

b)  Defendant, Oscar Llord, is an individual residing in the State of Florida, Miami-Dade County.

c)  Defendant, Ole,. LLC a/k/a Oscar Llord Entertainment, LLC is a Florida Limited Liability Company with it's principal business in Miami Beach, Florida and whose status is inactive.

d)  Defendant, Creative Icons, LLC, is Florida Limited Liability Company that has its principal place of business in Coral Gables, Florida. Oscar Llord is the sole member of Creative Icons, LLC.

4.      Plaintiff seeks total damages in the amount of over $5,250,000.00 for actions specified in the Complaint attached herewith.

5.      Defendant notices the removal of this action on the grounds that they are between citizens of different states and involves a claim in excess of $100,000.00 exclusive of interest and costs, and so is removable under 28 U.S.C. Section 1332(a)(1) and (c)(1) and Section 1441, et seq.

6.     This Notice of Removal is timely since it is filed within thirty (30) days of service of the Summons and Complaint upon Defendants [See Exhibit "A"].

WHEREFORE, Defendants respectfully request that the action pending against it in the Supreme Court of the State of New York, County of the Bronx, be removed from there to this Court.

Dated: June 18, 2009

<div style="margin-left:40%;">

CAPLAN & ROSS, LLP
100 Park Avenue, 18th Floor
New York, New York 10017
Telephone:  (212) 973-2377
Facsimile:  (212) 661-4290


By:  *Brian D. Caplan*
     Brian D. Caplan, Esq.
     Federal Bar No. BC-1713


And

ROTHSTEIN ROSENFELDT ADLER
100 S.E. 2nd Street, Suite 3300
Miami, Florida 33131
Telephone:  (305) 381-7115
Facsimile:  (305) 381-7116
By:  Marc Nurik, Esq.
     New York Bar No. 272817
     Richard C. Wolfe, Esq.
     Florida Bar No. 355607

</div>

To:

William R. Kutner
576 Stonehurst Blvd.
Freehold, New Jersey 07728

FILED  Jun 02 2009 Bronx County Clerk

Index Number: 304441-2009

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF THE BRONX

-------------------------------------X

NEW WORLD BOOKING INC. and          :   Index No. _____/09
MENUDO ENTERTAINMENT LLC,
                                    :   **S U M M O N S**
                    Plaintiffs,
                                    :

        -against-                   :

OLE, LLC a/k/a OSCAR LLORD          :
ENTERTAINMENT, LLC;
CREATIVE ICONS, LLC; and            :
OSCAR LLORD,
                                    :
                    Defendants.     :

-------------------------------------X

**TO THE DEFENDANTS NAMED HEREIN:**

   **YOU ARE HEREBY SUMMONED** to answer the complaint in this action
and to serve a copy of your answer upon the undersigned within 20
days of service, exclusive of the day of service, or, if this Sum-
mons is not personally delivered to you within the State of New
York, within 30 days from the date on which service becomes com-
plete.

   **PLEASE TAKE NOTICE** that, if you fail to serve your answer in
a timely manner, a Judgment will be taken against you by default
for all the relief demanded in the annexed Verified Complaint.

   **PLEASE TAKE FURTHER NOTICE** that venue in Bronx County is based
upon the residence of Plaintiff MENUDO ENTERTAINMENT LLC, at 583
City Island Avenue, Bronx, New York 10464.

**ORIGINAL**                          **EXHIBIT A**

FILED  Jun 02 2009 Bronx County Clerk

Dated:   Freehold, New Jersey
         May 27, 2009

                            WILLIAM R. KUTNER, ESQ.
                            Attorney for Plaintiffs

                     By:    WWRICt
                            William R. Kutner, Esq.
                            57G Stonehurst Boulevard
                            Freehold, New Jersey 07728
                            TEL (732) 252-5372
                                      -and-
                            63-84 Saunders Street
                            Suite 1-T
                            Rego Park, New York 11374
                            TEL (718) 275-8838

TO:  OLE, LLC a/k/a OSCAR LLORD
     ENTERTAINMENT, LLC
     c/o ROBERT E. MURDOCH, ESQ.
     Johnson, Anselmo, Murdoch, Burke &
     George, P.A.
     2455 East Sunrise Boulevard
     Suite 1000
     Fort Lauderdale, Florida 33304

TO:  CREATIVE ICONS, LLC
     1409 Urbino Avenue
     Coral Gables, Florida 33146

TO:  OSCAR LLORD
     1409 Urbino Avenue
     Coral Gables, Florida 33146

-2-

FILED  Jun 02 2009 Bronx County Clerk

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF THE BRONX

-------------------------------------X

NEW WORLD BOOKING INC. and            :   Index No. _____/09
MENUDO ENTERTAINMENT LLC,
                                      :   **VERIFIED COMPLAINT**

                    Plaintiffs,       :

          -against-                   :

OLE, LLC a/k/a OSCAR LLORD            :
ENTERTAINMENT, LLC;                   :
CREATIVE ICONS, LLC; and
OSCAR LLORD,                          :

                    Defendants.       :

-------------------------------------X

### PARTIES

1.  On January 25, 1999, NEW WORLD BOOKING INC. ("New World") was formed as a domestic business corporation under New York law.

2.  New World maintains an office in Bronx County at 583 City Island Avenue, Bronx, New York 10464.

3.  On January 15, 2004, GLOBAL ENTERTAINMENT, LLC ("Global") was formed as a foreign limited liability company under the laws of Massachusetts.

4.  Global maintains an office at 133 Puritan Road, Swampscott, Massachusetts 01907.

5.  GERALD N. BRENNER ("Brenner"), a natural person, is the Manager of Global.

FILED  Jun 02 2009 Bronx County Clerk

6.  On March 2, 2004, BIG BAR ENTERTAINMENT, LLC ("Big Bar") was formed as a domestic limited liability company under New York law.

7.  Big Bar maintains an office in Bronx County at 583 City Island Avenue, Bronx, New York 10464.

8.  JEFFREY WEINER ("Weiner"), a natural person, is a Manager of Big Bar.

9.  On March 4, 2004, MENUDO ENTERTAINMENT LLC ("ME-LLC") was formed as a domestic limited liability company under New York law.

10.  ME-LLC maintains an office in Bronx County at 583 City Island Avenue, Bronx, New York 10464.

11.  Global owns a fifty percent (50%) interest in ME-LLC.

12.  Big Bar owns a fifty percent (50%) interest in ME-LLC.

13.  Upon information and belief, on December 14, 2000, OLE, LLC ("Ole") was formed as a limited liability company under Florida law.

14.  Upon information and belief, on September 2, 2005, Ole changed its name to OSCAR LLORD ENTERTAINMENT, LLC ("Entertainment-LLC").

15.  Upon information and belief, ROBERT E. MURDOCH, ESQ. ("Attorney Murdoch") of Johnson, Anselmo, Murdoch, Burke & George, P.A., 2455 East Sunrise Boulevard, Suite 1000, Fort Lauderdale, Florida 33304, is the Registered Agent for service of process upon Ole a/k/a Entertainment-LLC.

-2-

FILED  Jun 02 2009 Bronx County Clerk

16.   Upon information and belief, on May 23, 2006, CREATIVE ICONS, LLC ("CI-LLC") was formed as a limited liability company under Florida law.

17.   Upon information and belief, CI-LLC maintains an office at 1409 Urbino Avenue, Coral Gables, Florida 33146.

18.   Upon information and belief, Attorney Murdoch is the Registered Agent for service of process upon CI-LLC.

19.   Defendant OSCAR LLORD ("Llord") is a natural person.

20.   Upon information and belief, Llord resides in Florida.

21.   Upon information and belief, Llord is the sole Member of CI-LLC.

22.   Upon information and belief, Llord is the sole Manager of CI-LLC.

23.   Upon information and belief, Llord is the Managing Member of CI-LLC.

24.   Upon information and belief, Llord is the sole principal of CI-LLC.

### JURISDICTIONAL ALLEGATIONS

25.   Ole a/k/a Entertainment-LLC has expressly consented to the in personam jurisdiction of this Court.

26.   Upon information and belief, CI-LLC has expressly assumed all the rights and all the obligations of Ole a/k/a Entertainment-LLC and is in all respects the successor-in-interest to Ole a/k/a Entertainment-LLC.

-3-

FILED  Jun 02 2009 Bronx County Clerk

27.  As successor-in-interest to Ole a/k/a Entertainment-LLC, CI-LLC has expressly consented to the in personam jurisdiction of this Court.

28.  In the alternative, upon information and belief, CI-LLC has transacted business within this State within the meaning of CPLR 302(a)(1) and is therefore subject to the in personam juris-diction of this Court for all causes of action alleged herein.

29.  Upon information and belief, Llord has transacted busi-ness within this State within the meaning of CPLR 302(a)(1) and is therefore subject to the in personam jurisdiction of this Court for all causes of action alleged herein.

## COMMON ALLEGATIONS OF FACT

30.  Plaintiffs repeat every allegation made in paragraphs 1 through 25 hereof with the same force and effect as if they were set forth herein at length.

31.  In 1999, Llord was President and Chief Executive Officer ("CEO") of "SONY Discos," which was, and still is, the Latin music division of SONY MUSIC INC. ("SONY Music").

32.  In 1999, Llord, who was President and CEO of SONY Discos, but was acting on behalf of himself and Ole, engaged New World to assist him in recruiting five young males to constitute a new ren-dition of "Menudo," a popular music group.

33.  At all times mentioned herein, the name "Menudo" was, and it still is, a registered trademark.

-4-

FILED  Jun 02 2009 Bronx County Clerk

34.   Llord expressly represented to New World that he owned the "Menudo" trademark.

35.   Llord further expressly represented to New World that there were no known claims, potential claims, or other discredits against his ownership of the "Menudo" trademark.

36.   New World agreed with Llord, who was acting on behalf of Ole, and with Ole that New World would arrange a competition in which young males would compete for the five available positions in the new rendition of "Menudo" and that New World would arrange for a major corporation would sponsor the competition.

37.   New World agreed with Llord, who was acting on behalf of Ole, and with Ole that New World would receive and enjoy all profits from the sponsored competition for the five available positions in the new rendition of "Menudo."

38.   New World made presentations to a number of potential corporate sponsors.

39.   K-Mart and Pepsi expressed strong interest in doing a deal in which various K-Mart stores would be sites for the competition and Pepsi would be sponsor of the competition.

40.   One of the material terms of the proposed deal was that K-Mart would make spaces known as "end caps" available to Pepsi in K-Mart stores for the sale of Pepsi's products.

-5-

FILED  Jun 02 2009 Bronx County Clerk

41.  One of the material terms of the proposed deal was that K-Mart would include advertisements for Pepsi products in K-Mart's circulars.

42.  One of the material terms of the proposed deal was that Pepsi would spend a substantial sum of money to promote the search.

43.  Before New World was able conclude and formalize the proposed deal with K-Mart and Pepsi, SONY Music advised New World that there was a claim against Llord's ownership and/or Ole's ownership of the "Menudo" trademark.

44.  Such claim was made by BMG Records Inc. ("BMG").

45.  The substance of such claim was that BMG had advanced money to the original "Menudo" music group for a new record album, but such new record album was never delivered to BMG.

46.  Llord advised ME-LLC that SONY Music was uncomfortable with the proposed deal with K-Mart and Pepsi because Llord was employed by SONY Music at that time and he was engaging in business involving a Latin music act on his own behalf and on behalf of Ole, rather than on behalf of SONY Discos.

47.  Under the foregoing circumstances, the proposed deal with K-Mart and Pepsi was not consummated.

48.  In due course, BMG settled its dispute concerning the album that the original "Menudo" music group never delivered to BMG.

49.  Approximately three years later, near the end of 2003, Brenner contacted New World and inquired whether New World would be

-6-

FILED  Jun 02 2009 Bronx County Clerk

interested in forming a partnership with an entity to be formed by Brenner to acquire the "Menudo" brand from Llord.   New World contacted BMG and was advised that BMG's claim concerning the "Menudo" trademark issue had been resolved.   Thereafter, Llord, acting on behalf of Ole, agreed to sell the "Menudo" trademark to ME-LLC in exchange for a certain amount of cash and a so-called "residual profit" position.

50.   Llord's "residual profit" position was to be equal to twenty-five percent (25%) of any distributions, retained earnings, dividends, profits, or other payments of any kind made to the equity Members of ME-LLC, namely, Global and Big Bar, but the calculation of the same was to exclude all bona fide reasonable salaries paid or to be paid to any equity Member of ME-LLC, Global, or Big Bar for actual services performed.

51.   The terms of the foregoing sale transaction further provided that Ole would receive twenty-five percent (25%) of the gross proceeds of the sale, transfer, or exclusive license of the "Menudo" trademark to another party by ME-LLC, less any actual outside closing costs for any such transactions.

52.   ME-LLC agreed to give Llord the "residual profit" position because he made certain representations to ME-LLC.

53.   In particular, Llord represented to ME-LLC that as President and CEO of SONY Discos he was the "most powerful Latin record industry executive" in this country and that he would have "no

FILED  Jun 02 2009 Bronx County Clerk

problem" securing a record label deal for the new rendition of "Menudo" when ME-LLC was ready to proceed with that element of its business plan.  In truth, Llord was on the verge of being dismissed by SONY Music at the time when he made such representations to ME-LLC.  Shortly thereafter, he was, in fact, dismissed by SONY Music for cause.

54.  After his dismissal by SONY Music, Llord established his own record label ("OLE RECORDS") and then falsely represented and advertised at the Billboard Music Convention in Miami, Florida, that the new rendition of "Menudo" was signed to OLE RECORDS when, in fact, the new rendition of "Menudo" was not so signed.

55.  Such false representation to the industry discredited ME-LLC and its principals, including Weiner, Brenner, and others, to individuals and businesses within the music industry.

56.  Llord telephoned Weiner in New York and stated to Weiner, in substance, that his association with ME-LLC was troublesome to him because he had no "say" in the management of the new rendition of the "Menudo" music group, and that his "ego" would not allow him to remain in that position.  Llord inquired whether ME-LLC would be interested in buying out his "residual profit" position at a discounted price.  Weiner stated to Llord, in substance, that he would consult with the other principals of ME-LLC and get back to him. Approximately two weeks later Llord called Weiner again to inquire whether ME-LLC had any interest in the proposed buyout.

FILED  Jun 02 2009 Bronx County Clerk

57.  While on vacation in Florida, Weiner received a telephone call from Llord, who stated that he and MARK STOLLMAN, ESQ. ("Attorney Stollman"), who was then Llord's attorney, wished to pay a call upon Weiner "to run something by [him]."

58.  Upon arriving, they offered to sell to ME-LLC Llord's "residual profit" position.  They explained this by stating that Llord's ego would not allow him to remain involved in the new rendition of "Menudo" without having any input into the management of the new rendition of the music group.

59.  Weiner and Brenner rejected such proposal because the then-existing agreement between ME-LLC, on the one hand, and CI-LLC and Llord on the other hand, provided for a One Million Dollar ($1,000,000) revenue threshold before a final payment would be due from ME-LLC to Llord and such threshold had not been satisfied.

60.  Over the next several weeks, Attorney Stollman called ME-LLC several times to inquire as to whether Weiner and Brenner had changed their minds about Llord's desire to sell his "residual profit" position to ME-LLC.

61.  Llord then traveled to New York to a meeting at Sea Shore restaurant on City Island in Bronx County to make a further effort to sell his "residual profit" position to ME-LLC.

62.  Over the next few months, Attorney Stollman made at least ten (10) additional phone calls to ME-LLC to attempt to persuade ME-LLC to purchase Llord's "residual profit" position.

-9-

63.   Later, after Attorney Stollman and Llord had been attempting to coax ME-LLC to purchase Llord's "residual profit" position for a total of approximately one full year, Llord contacted ME-LLC again to try to persuade ME-LLC to purchase the same.

64.   By that point in time ME-LLC had arranged a record label deal for the new rendition of "Menudo" with EPIC RECORDS ("Epic"). Epic was, and still is, a SONY Music label.

65.   ME-LLC was concerned about making any agreement that might disturb its business relationship with Epic and/or with SONY Music.  Accordingly, ME-LLC advised Llord to have his attorney contact Weiner to negotiate such a deal.

66.   ME-LLC was then approached by Murdoch, who was, by then, Llord's new attorney in this matter.

67.   All further negotiations were conducted by telephone, between Murdoch, who was in Florida and who purported to represent both "sides," and Weiner, who was in ME-LLC's offices in Bronx County, New York.

68.   Prior to reaching an agreement with Epic Records, ME-LLC approached numerous record labels, in both the general music market and the Latin music market, in an attempt to secure a record label deal for the new rendition of "Menudo."

69.   Llord's fraudulent announcement that the new rendition of "Menudo" was signed to OLE RECORDS and his contentious position

-10-

FILED  Jun 02 2009 Bronx County Clerk



with SONY Discos caused virtually every label ME-LLC approached to decline to enter into a deal with the new rendition of "Menudo."

70.  ME-LLC succeeded in establishing an agreement with YAHOO! ("Yahoo!") to do Internet business with the new rendition of "Menudo."

71.  ME-LLC succeeded in establishing an agreement with RE-VEILLE STUDIOS ("Reveille") to do television business with the new rendition of "Menudo."

72.  On the strength of ME-LLC's deals with Yahoo! and Reveille, SONY Music allowed Epic to enter into a record label deal with ME-LLC for music to be performed by the new rendition of "Menudo."

73.  In view of Llord's previous involvement with the "Menudo" franchise, SONY Music required ME-LLC to enter into a separate agreement with SONY Music in which ME-LLC represented and warranted to SONY Music that ME-LLC did not then have, and would not in the future have, any business relationship with Llord as a condition of allowing Epic to enter into the record label deal mentioned above.

74.  In view of the history of the matter, specifically, the claim made by BMG against Llord, ME-LLC required Llord and Attorney Stollman to assure ME-LLC that the "Menudo" trademark was free of any known claims, potential claims, or other discredits at that time.

-11-

FILED  Jun 02 2009 Bronx County Clerk

75.   Llord and Stollman responded by orally assuring ME-LLC that the "Menudo" trademark was free of any known claims, potential claims, or other discredits at that time.

76.   ME-LLC insisted that such oral assurance be memorialized in a writing.

77.   "As of" January 19, 2004, Llord, acting on behalf of Ole, caused Ole to enter into an agreement with ME-LLC (the "Agreement").   A true copy of the Agreement is annexed hereto as Plaintiffs' Exhibit "1."

78.   In the Agreement, Ole expressly represented to ME-LLC that, so far as it knew, there was absolutely no claim whatsoever against the "Menudo" trademark.   The exact language of the Agreement on that point appears in paragraphs 3.3, 4.1, and 4.4 of the Agreement.

79.   In the Agreement Ole expressly agreed that, for a period of two years, Llord would protect ME-LLC from any claim for trademark infringement.   The exact language of the Agreement on that point appears in paragraph 4.7.

80.   In reliance on the assurances given to it by Llord, acting individually and on behalf of CI-LLC, and the assurances given to it by Stollman, ME-LLC entered into the Agreement and acquired the "Menudo" trademark.

-12-

FILED  Jun 02 2009 Bronx County Clerk

81.  ME-LLC made substantial payments to Llord and to CI-LLC in reliance on the integrity of the "Menudo" trademark that Llord, acting on behalf of Ole, and Ole sold to ME-LLC.

82.  ME-LLC expended substantial additional sums of money, and other resources, to promote the "Menudo" name and product.

83.  As is alleged with greater particularity below, in reliance on the representations made to it by Llord, Ole, and Stollman, ME-LLC entered into agreements with various third parties.

84.  ME-LLC entered into an agreement with the WILLIAM MORRIS AGENCY to represent it.

85.  ME-LLC entered into an agreement with Yahoo! to be its Internet partner.

86.  ME-LLC entered into an agreement with Reveille to be its television partner.

87.  Through Reveille, ME-LLC entered into an agreement with MTV Networks ("MTV") to film and to televise two television series based upon the search to find five males for a new rendition of the "Menudo" music group.

88.  ME-LLC entered into an agreement with SONY Music under which Epic label for all music released by the new rendition of the "Menudo" music group.

89.  ME-LLC entered into an agreement with S.B. CORNERSTONES to be the licensing agent for the new rendition of the "Menudo" music group.

-13-

FILED  Jun 02 2009 Bronx County Clerk

90.   ME-LLC entered into an agreement with WRIGHT ENTERTAIN-MENT GROUP ("Wright") to manage the new rendition of the "Menudo" music group.

91.   During 2008, DARREN McGILLIS ("McGillis"), president of McGILLIS RECORDS ("M-R"), claimed that he, or M-R, or both of them, had the English language recording rights to the "Menudo" trademark and claimed that he had purchased such rights from the trademark holder.

92.   McGillis proceeded to publicly challenge ME-LLC's owner-ship of the "Menudo" trademark, and, in so doing, embarrassed ME-LLC and the five young males who had been selected to comprise the new rendition of the "Menudo" music group in a very high profile, public attack on the Internet.

93.   Upon information and belief, at the time when they en-tered into the Agreement with ME-LLC, Stollman, Llord, and Ole were actually aware, or on reasonable notice, of the claim that McGillis eventually made concerning the "Menudo" trademark, but they did not disclose the same to ME-LLC.

94.   Upon information and belief, at the time when they en-tered into the Agreement with ME-LLC, Stollman, Llord, and Ole were actually aware, or on reasonable notice, of the tactics that McGil-lis would use against ME-LLC with respect to his claim against the "Menudo" trademark, but they did not disclose the same to ME-LLC.

FILED  Jun 02 2009 Bronx County Clerk

95.   The claim made by McGillis tarnished the "Menudo" trade-mark and the "Menudo" brand in the marketplace.

96.   As is alleged with greater particularity below, the claim made by McGillis destroyed or damaged the agreements ME-LLC made with the third-parties named in paragraphs, with other third-par-ties, and with entities and individuals involved in the music in-dustry in general.

97.   ME-LLC was advised by Wright that if the claims made by McGillis were to result in litigation, it would "torpedo" the "Me-nudo" brand in the eyes of the various third-parties with whom ME-LLC had contracted.

98.   ME-LLC refrained from commencing an action against McGil-lis and M-R.

99.   The circumstances described above materially damaged the "Menudo" trademark, the new rendition of the "Menudo" music group, and ME-LLC.

100.   Upon information and belief, Stollman, Llord, acting in-dividually and on behalf of Ole, and Ole actually knew, or had rea-son to know, that there were rumors of illicit drug use by members of the original Menudo music group and rumors of sexual molestation of one or more members of the original Menudo music group.

101.   In addition to failing to disclose to ME-LLC McGillis's claim against the "Menudo" trademark, Stollman, Llord, acting indi-vidually and on behalf of Ole, and Ole failed to disclose to ME-LLC

-15-

FILED  Jun 02 2009 Bronx County Clerk

the fact that there were rumors of illicit drug use by members of the original Menudo music group and rumors of sexual molestation of one or more members of the original Menudo music group.

102.  If any such rumors were true, and if such rumors were to become widely known, they would have damaged the value of the "Menudo" trademark and the "Menudo" brand."

103.  ME-LLC retained JEFFREY COHEN, ESQ., a trademark attorney, and was advised, in substance, that the McGillis claim would have to be litigated in a federal court.

104.  ME-LLC notified Stollman and Llord of the McGillis claim and, in substance, asked why it was not disclosed to ME-LLC at the time when the Agreement was reached, as was required by the terms of the Agreement.

105.  Stollman and Llord replied, in substance, that the McGillis claim lacked merit and they claimed to have a General Release made by McGillis, which they said they would furnish to ME-LLC.  They never furnished such General release to ME-LLC.

106.  McGillis furnished to ME-LLC a copy of a check issued by an entity known as "RIGHT TOUCH," which entity was, upon information and belief, owned and/or controlled by Llord.  McGillis maintained to ME-LLC that such payment was for one specific English language musical exploitation of work by the original "Menudo" music group.

-16-

FILED  Jun 02 2009 Bronx County Clerk



107.   Under these circumstances, all record labels featuring Latin music acts, including SONY Music and SONY Discos, refused to do business with ME-LLC.

108.   For this reason only, and to mitigate ME-LLC's enormous loss of its investment of cash and other resources in the new rendition of the "Menudo" music group, Weiner entered into an agreement with CI-LLC, as successor-in-interest to Ole, to purchase Llord's "residual profit" participation in order to terminate his participation in the new rendition of the "Menudo" music group and to pave the way for successful business relations with third parties. A copy of this agreement (the "Assignment") is annexed hereto as Plaintiff's Exhibit "2."

109.   Weiner assigned his rights under the foregoing transaction to ME-LLC.

### FIRST CAUSE OF ACTION

110.   Plaintiffs repeat and reallege each and every allegation made in paragraphs "1" through "109" hereof with the same force and effect as if set forth herein at length.

111.   The representations that CI-LLC made to ME-LLC in paragraph "3.3" of the Agreement were materially false when made in that McGillis had a material claim against the "Menudo" trademark at that time.

112.   CI-LLC has breached the material terms of the Agreement.

-17-

FILED Jun 02 2009 Bronx County Clerk

113.  ME-LLC is damaged in a sum not less than FIVE MILLION DOLLARS ($5,000,000).

## SECOND CAUSE OF ACTION

114.  Plaintiffs repeat and reallege each and every allegation made in paragraphs "1" through "113" hereof with the same force and effect as if set forth herein at length.

115.  The representations that CI-LLC made to ME-LLC in paragraph "3.3" of the Agreement were materially false when made in that McGillis had a material claim against the "Menudo" trademark at that time.

116.  Upon information and belief, Llord, acting individually and acting on behalf of CI-LLC, actually knew, or reasonably should have known, that McGillis had a material claim against the "Menudo" trademark at that time.

117.  Such representations appeared to be true and ME-LLC relied on the apparent truth of such representations.

118.  ME-LLC's reliance on the apparent truth of such representations was reasonable under the circumstances.

119.  ME-LLC did not know and did not have reason to believe that such representations were false at the time when ME-LLC entered into the Agreement with CI-LLC.

120.  By making such false representations to ME-LLC, CI-LLC fraudulently induced ME-LLC to enter into the Agreement.

-18-

FILED  Jun 02 2009 Bronx County Clerk

121.   ME-LLC is damaged in a sum not less than FIVE MILLION DOLLARS ($5,000,000).

### THIRD CAUSE OF ACTION

122.  Plaintiffs repeat and reallege each and every allegation made in paragraphs "1" through "121" hereof with the same force and effect as if set forth herein at length.

123.  Paragraph "8.8" of the Agreement expressly provides that, in the event of litigation between CI-LLC, as seller, and ME-LLC, as buyer, "the prevailing Party shall be entitled to recover from the other Party its reasonable attorneys [sic] fees and costs."

124.  In the event that ME-LLC is a "prevailing party" in this action as against CI-LLC, ME-LLC is entitled to a Judgment against CI-LLC for its reasonable attorneys' fees and costs.

125.  Upon information and belief, ME-LLC's reasonable attorneys' fees and costs will amount to a sum not less than TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000).

Dated:  Freehold, New Jersey
        May 27, 2009

                        **WILLIAM R. KUTNER, ESQ.**
                        Attorney for Plaintiffs

            By:   _William R. Kutner_
                        **William R. Kutner, Esq.**
                        57G Stonehurst Boulevard
                        Freehold, New Jersey 07728
                        TEL (732) 252-5372
                                   -and-

-19-

FILED  Jun 02 2009 Bronx County Clerk

63-84 Saunders Street
Suite 1-T
Rego Park, New York 11374
TEL (718) 275-8838

TO:   **OLE, LLC a/k/a OSCAR LLORD
        ENTERTAINMENT, LLC**
      c/o ROBERT E. MURDOCH, ESQ.
      Johnson, Anselmo, Murdoch, Burke &
      George, P.A.
      2455 East Sunrise Boulevard
      Suite 1000
      Fort Lauderdale, Florida 33304

TO:   **CREATIVE ICONS, LLC**
      1409 Urbino Avenue
      Coral Gables, Florida 33146

TO:   **OSCAR LLORD**
      1409 Urbino Avenue
      Coral Gables, Florida 33146

-20-

FILED  Jun 02 2009 Bronx County Clerk

## VERIFICATION

**WILLIAM R. KUTNER**, an attorney duly admitted to practice law in the state of New York, affirms the following to be true, under the penalties of perjury:

I am the attorney-of-record for Plaintiffs in this action.  I have read the foregoing Complaint and I am familiar with the allegations made therein.  I hereby verify that all such allegations are true as a matter of my personal knowledge, except those allegations which are made upon information and belief, and that as to those allegations I believe them to be true, the source of my belief being conversations I have had and documents I have read.  I make this Verification for Plaintiffs because one of them is a corporation, one of them is a limited liability company, and neither one of them has an office in either of the counties in which I maintain offices for the practice of law.

Dated:  Freehold, New Jersey
        May 27, 2009

_____
WILLIAM R. KUTNER, ESQ.

-21-

FILED Jun 02 2009 Bronx County Clerk
MAR-11-2009 11:11A FROM:                                    TO:17322525372              P.5

## PURCHASE AGREEMENT

This PURCHASE AGREEMENT (the "Agreement") is entered into as of January 19, 2004, by and between Ole, LLC, a Florida limited liability corporation, ("Seller") and Menudo Entertainment LLC, a New York limited liability corporation, with an address at 583 City Island Avenue, New York, NY 10464 ("Buyer"), with regard to the following facts and circumstances.

WHEREAS, Seller desires to sell, assign and transfer all of Seller's right, title and interest in, to and under the Trademark and the Domain Names (as defined below) (the "Assets") to Buyer, and Buyer desires to purchase from Seller the same, all on the terms and subject to the conditions set forth in this Agreement.

NOW THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Buyer and Seller (the "Parties") hereby agree as follows:

1.  **Purchase of Intellectual Property.**

    1.1  Upon execution of this Agreement, in consideration of the following payments by Buyer to Seller (the "Purchase Price"):

    1.1.1  Concurrently with its execution of this Agreement, Buyer shall put into escrow the sum of One Hundred Fifty Thousand Dollars ($150,000.00) (the "Initial Payment"), which will be held in escrow pursuant to the Escrow Agreement appended hereto.  As fully set forth in the terms of the Escrow Agreement, the Escrow Agent shall release the Initial Payment to Seller after thirty (30) days receipt of said funds, but in no event later than March 17, 31st, 2004, provided that there has been no colorable claim by a third party by that time.

    1.1.2  An additional payment of Two Hundred Fifty Thousand Dollars ($250,000.00) will be made within five (5) business days following Seller's receipt of One Million Dollars ($1,000,000) from sponsorship proceeds for use or license of the mark "Menudo" and/or record royalties earned from musical recordings embodying the performances of a musical group known as "Menudo".  Buyer agrees that it shall provide Seller with prompt notice of the status of sponsorship and/or recording agreements entered into by Buyer.

    1.1.3  In addition there shall be a further payment of One Hundred Fifty Thousand Dollars ($150,000.00) on July 19, 2005 (i.e., 18 months from the execution of this Agreement).

# EXHIBIT A

1.1.4   In addition, Seller will receive twenty-five percent (25%) of any distributions, ~~retained earnings~~, dividends, profits, or payments of any kind made to the equity Members of Buyer, but specifically excluding bona fide reasonable salaries to any Equity Member of Buyer for actual services rendered.

1.1.5   Seller will also receive twenty-five percent (25%) of the gross proceeds (reduced only by actual 3rd party closing costs) with respect to any sale, transfer or exclusive license of the Assets by Buyer. Payment on such event will be in lieu of payment pursuant to Section 1.1.4 above if the distribution to the equity Members of Buyer is a result of such sale, transfer or exclusive license.

1.1.6   In the event Buyer offers musical recording services of a musical group under the name "Menudo," and in the event Seller is in the business of commercially releasing musical recordings, Seller shall have the first opportunity to offer an exclusive recording agreement to Buyer, in writing, setting forth the material terms of such proferred agreement. Buyer may solicit alternate offers, and prior to Buyer entering into any exclusive recording agreement, Buyer shall notify Seller of the material terms of such offer. Seller shall have thirty (30) days to match the material terms of the third party offer, and provided Seller does offer a recording agreement whose terms match the material terms of the third party proffered agreement, Buyer may not enter into an agreement with said third party.

1.1.7   Buyer will keep Seller reasonably apprised of all activities and events in connection with the sale and value of the Assets. *Buyer hereby appoints Oscar Llord, president of Seller, as a member of*

1.2   Seller irrevocably sells, assigns, conveys and transfers to Buyer, free and clear of all Liens (as defined below), all of Seller's right, title and interest in, to and under the following:

1.2.1   Internet domain names "Menudo" and all registration rights therefore, other rights thereto or associated therewith and all goodwill pertaining thereto.

1.2.2   Any and all trademark rights, servicemark rights, trade names, including all common law trademark rights for and in the mark "Menudo" (the "Mark"), and all goodwill associated with the Mark.

1.2.3   All income, royalties, damages and payments in respect of the Mark which arise after the date hereof.

*Buyer's Board of Directors. Until such time that the Assets of Buyer are sold or transferred, or until his resignation, Oscar Llord shall be a member of the Board of Directors.*

FILED  Jun 02 2009 Bronx County Clerk
MAR-11-2009 11:12A FROM:                                          TO 17322525372          P.7

1.2.4   All causes of action at law or in equity and rights to sue, counterclaim and recover for past, present or future infringement of the Mark.

1.2.5   All rights corresponding to the foregoing throughout the world.

1.3   For purposes of this Agreement, the term "Lien" shall mean, with respect to the Mark, any lien, pledge, charge, security interest, restrictive covenant or encumbrance of any kind or rights of any person or entity in respect of the Mark, whether or not filed, recorded or otherwise perfected or effective under applicable law, or any preference, priority or preferential arrangement of any kind or nature whatsoever relating to the Mark.

2.   **Payment of Purchase Price.** The Initial Payment of the Purchase Price shall be payable by wire transfer to the account and at the bank designated by Seller in accordance with the Escrow Agreement.

2.1   In the event Buyer fails to make any payment pursuant to this Agreement, Seller shall send written notice to Buyer, via certified or registered mail-return receipt requested, of such failure, and Buyer shall have ten (10) days to make such payment. In the event Buyer fails to cure, the Assets shall revert to Seller. In such event, Buyer will cooperate in all respects to effect such reversion, and shall execute any and all documents required therefore. In the event Buyer does not so cooperate and/or execute any such documents, Seller is hereby granted the right by Buyer to execute such documents in Buyer's name as may be required to effect the reversion of the Assets.

3.   **Trademark: MENUDO**

3.1   Seller hereby represents and warrants to Buyer that Seller is the owner of Registration No. 2,450,894 for the mark MENUDO (the Trademark Registration), registered in the U.S. Patent and Trademark Office (the "USPTO"). Seller hereby irrevocably transfers, assigns and conveys to Buyer all of Seller's right, title, goodwill (including the portion of the business to which the Mark pertains) and interest in and to the Mark and Trademark Registration. Seller agrees to execute any and all further instruments, documents or applications as may be reasonably requested by Buyer to consummate the transfer of Seller's right, title, goodwill (including the portion of the business to which the Mark pertains) and interest in such Trademark Registration, and the recordation of same with the USPTO.

3.2   **No Other Trademarks.** Seller hereby represents and warrants to Buyer that Seller does not own or use any other trademark, service mark or other intellectual property rights of any kind in any name similar to the Mark,

TO:17322525372          P.8

and Seller has not filed any other trademark application anywhere in the world in respect thereof. Notwithstanding the foregoing, in the event Seller now has or hereafter acquires any such rights, Seller shall and hereby does irrevocably transfer any and all such rights to Buyer at no additional cost beyond the consideration provided in this Agreement.

3.3   Further Assurances; No Infringement.  Seller hereby represents and warrants to Buyer that Seller has not received any notice, and that to the best of Seller's knowledge, the Assets or any use of the Assets does not infringe upon any trademark, service mark or other intellectual property rights of any kind of any third party. Seller hereby irrevocably agrees that Seller shall not file an application for, sell, give, assign, convey or otherwise transfer, to any person or entity other than Buyer, any trademark, service mark or other intellectual property rights or licenses in any other name that includes the Mark, any variation thereof or any other domain names or trademarks substantially or confusingly similar thereto.

4.    Representations and Warranties of Seller.  Seller hereby represents and warrants to Buyer that:

4.1   To the best of its knowledge, Seller is the sole and exclusive beneficial, legal and record owner of the Assets and other rights therein or associated therewith, free and clear of all Liens.

4.2   Organization.  Ole, LLC is a Florida Limited Liability Corporation, duly organized and validly existing and in good standing under the laws of the State of Florida.

4.3   Authorization of Agreement; No Breach.

4.3.1   The execution, delivery and performance of this Agreement has been duly and validly authorized. Seller has the full power and authority to execute, deliver and perform this Agreement and to consummate all transactions hereby contemplated. Neither such execution, delivery and / or performance nor compliance by Seller with the terms and provisions hereof will (i) conflict with or result in a breach of any of the terms, conditions or provisions of the charter or OLE, LLC; (ii) constitute a violation of, conflict with or result in any breach of or default under, result in any termination or modification of, or cause any acceleration of any obligation of the Seller, resulting in creation of a lien, charge or encumbrance against Seller or the Assets. This Agreement constitutes the valid and binding obligation of the Seller enforceable against Seller in accordance with its terms (subject to any applicable bankruptcy, reorganization, insolvency or other laws, now or hereafter in effect, affecting creditors' rights generally as well as all rights in equity).

FILED Jun 02 2009 Bronx County Clerk
MAR-11-2009 11:18A FROM:                                    TO:17322525372              P.13

4.7.1    If any claim or liability shall be asserted against any Indemnified
Party which would give rise to a claim by such Indemnified Party
against Seller for indemnification under the provisions of this
section, such Indemnified Party shall promptly notify the Seller in
writing of the same providing details of the claim and give all
reasonable cooperation in the defense thereof and the Seller shall
be entitled at its own expense to compromise or defend any such
claim provided. Failure to give prompt notification shall not limit
the Seller's obligation except to the extent it is actually prejudiced
by the delay in notice.

5.    Registration and Transfer of Assets.

5.1    Seller hereby agrees to cooperate with Buyer and to follow Buyer's
instructions in order to effectuate the transfer of the Trademark
Registration and the Domain Names and all related rights in a timely
manner upon and continuing after the execution of this Agreement. In
accordance with the foregoing, Seller hereby agrees, promptly upon the
execution of this Agreement to execute and assist Buyer in the preparation
and filing of the necessary documentation and / or correspondence with
the appropriate registration authority, service provider and / or
governmental entities to authorize and / or register the transfer of the
Assets and related rights contemplated hereunder.

5.2    Simultaneous with the execution of this Agreement, Seller shall execute
and deliver to Buyer a duly completed, signed and duly notarized
"Registration Name Change Agreements" ("RNCA's") in the form
required by NSI (or other registrar) and in form and substance reasonably
satisfactory to Buyer to transfer all URL's to Buyer.

6.    Further Assurances.  Seller hereby further agrees to do or cause to be done all
such further acts, and to be executed and delivered such further documents,
instruments, certificates and registrations as Buyer shall reasonably request to
change the Assets as contemplated hereby or to better vest in Buyer good, valid
and marketable title to any and all rights intended to be conveyed hereunder,
including, without limitation, the Assets.

7.    Remedies.  The Parties hereby acknowledge that the payment of the Purchase
Price hereunder is expressly conditioned upon the completion, on or immediately
following the date of execution of this Agreement, of the due and proper
registration of the transfer of the Assets, including the assignment of the
Trademark Registration, as contemplated hereunder with the appropriate
registration authority, service provider and / or governmental entities, and the
Buyer will promptly undertake all such required actions upon execution hereof.
In the event that, for any reason other than the willful misconduct of Buyer, Buyer
is unable to properly effect such registration of the Assets or assignment of the

FILED  Jun 02 2009 Bronx County Clerk

## ASSIGNMENT

This Assignment is by and between **Creative Icons, LLC**, as successor to OLE, LLC, (referred to herein as "Assignor") and **Jeffery Weiner** or his assignee, a New York resident, with an address at 583 City Island Avenue, New York, New York 10464 ("Assignee").

WHEREAS, Ole, LLC and Menudo Entertainment LLC entered into a Purchase Agreement dated January 19, 2004 (the "Agreement"), wherein Ole, LLC sold, assigned and transferred all of its right, title and interest in, to and under the Trademark and Domain Names defined in the Agreement to Menudo Entertainment LLC; and

WHEREAS, Ole, LLC assigned all of its rights and obligations under the Agreement to the Assignor; and

WHEREAS, Assignee is a principal of Menudo Entertainment LLC, and

WHEREAS, the Agreement provides for the payment of certain sums of money to Assignor upon the attainment of specified thresholds; and

WHEREAS, the Agreement provides for the payment of certain additional sums of money to Assignor in the event of various specified events; and

WHEREAS, the Assignor and Assignee have mutually agreed to a complete and total assignment of the Assignor's interest in the Agreement, including each and every of the Menudo Entertainment LLC's financial and/or contractual obligations to the seller (or its assignee) under the Agreement such that, upon the complete and timely payment to such seller (or its assignee) thereof, no additional sums shall remain payable to such seller (or its assignee) in connection with the Agreement.

THEREFORE, In consideration of ten dollars in hand paid and acknowledged as received by the Assignor as lawful separate consideration for this Assignment, Assignor and Assignee hereby agree as follows:

1. In exchange for the sum of Four hundred and fifty thousand ($450,000) dollars (the "Assignment Price") payable pursuant to the terms hereof, Assignor and Assignee hereby agree that, upon full and timely payment of the Assignment Price, all payments pursuant to the Agreement shall be deemed satisfied in their entirety, such that Menudo Entertainment LLC and the Assignee shall thereafter have no additional financial or other contractual obligation to the Assignor in connection with the Agreement.

2. The Buyout shall be payable as follows:

A. Twenty-five thousand($25,000) dollars shall be payable upon the execution hereof.
B. The balance, equaling $425,000 shall be payable not later than December 14, 2007.

C. In the event that the balance in Subparagraph B. is not paid by the stated date, an additional $100,000 will be paid on December 15, 2007, and the remaining balance of $325,000 will be paid no later than March 31, 2008. In the event that such balance is not paid by such date, an additional $75,000 will be paid on March 31, 2008, and the remaining $250,000 balance will be paid on or before December 1, 2008. Any of the specific stated amounts set forth in this subparagraph C. not paid on

FILED  Jun 02 2009 Bronx County Clerk

D. In the event of a sale, transfer, assignment or conveyance of any interest in Menudo Entertainment, LLC or in the Trademark or Domain Names or of any interest owned by the Assignee in Menudo Entertainment, LLC or the interest assigned herein, any existing balance due at the time of such sale, transfer, assignment or conveyance shall become immediately due and payable and shall earn interest as provided in Subparagraph C. above. In the event that Menudo Entertainment enters into a financing transaction in which any of its assets are utilized as collateral for a loan to the company, then the proceeds from such financing shall first be used to payoff (or if insufficient to pay in full, to reduce) the balance due the Assignor at the time of such financing.

E. All sums may be (but are not obligated to be) paid earlier than the dates set forth above without penalty.

3. Upon full payment of the Assignment Price, it is acknowledged and agreed that neither Assignee nor Menudo Entertainment LLC shall have any further obligations to Assignor under any clause or paragraph of the Agreement and Assignor acknowledges that upon such full payment Menudo Entertainment LLC and the Assignee will have satisfied all obligations required under the Agreement and this Assignment and pursuant to all of the paragraphs of the Agreement prior to the date hereof.

4. The parties hereto agree that Assignment represents a valid and binding agreement among the parties. Upon the payment of all funds agreed upon herein the Agreement shall be deemed satisfied in its entirety. Upon the payment of all funds agreed upon herein, Menudo Entertainment LLC and Assignee shall have no additional obligation to the Assignor and Assignor relinquishes and renounces any rights whatsoever in the Agreement upon such full payment hereunder.

5. Menudo Entertainment LLC has joined in and consented to this Assignment to evidence its agreement to the terms of Section 2D. above, and that neither the Assignor nor Ole. LLC have any further liability under the Agreement, and that until the Assignor is paid in full under this Assignment, the Assignor shall continue to have the same rights and remedies against Menudo Entertainment LLC contained in Section 2.1 of the Agreement, notwithstanding the assignment of its interest under the Agreement. Assignee also acknowledges and agrees to the foregoing.

Accepted and Agreed:
Assignee:                                          Assignor:
Jeffery Weiner                                     Creative Icons, LLC

_____                  By:_____
Jeffery Weiner                                     Oscar Llord. Manager
Date: 9/19/07                                       Date: 9-13-07

Joinder and Consent:

Menudo Entertainment LLC

By:_____
Title: _____
Date: 9/19/07

FILED Jun 02 2009 Bronx County Clerk

SUPREME COURT OF THE STATE OF NEW YORK       Index No. _____-09
COUNTY OF THE BRONX

NEW WORLD BOOKING INC., et al.,

Plaintiffs,

-against-

OLE, LLC a/k/a OSCAR LLORD ENTERTAINMENT, LLC, et al.,

Defendants.

## SUMMONS AND VERIFIED COMPLAINT

WILLIAM R. KUTNER, ESQ.
Attorney for Plaintiffs
57G Stonehurst Boulevard
Freehold, New Jersey 07728
TEL/FAX (732) 252-5372
-and-
63-84 Saunders Street
Suite 1-T
Rego Park, New York 11374
TEL (718) 275-8838

## CERTIFICATE OF SERVICE

I, Jonathan J. Ross, hereby certify that on June 18, 2009 I caused a true and correct copy of

the within Notice of and Petition of Removal, to be served by first class mail upon the following:

William R. Kutner, Esq.
57G Stonehurst Boulevard
Freehold, New Jersey  07728
Attorneys for Plaintiffs


Dated: June 18, 2009
New York, New York


_____
Jonathan J. Ross (JR 0581)