UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------X

NEW WORLD BOOKING INC. and         :   09-CIV-5600 (AKH)
MENUDO ENTERTAINMENT LLC,
                                   :

                    Plaintiffs,
                                   :

          -against-
OLE, LLC a/k/a OSCAR LORD          :
ENTERTAINMENT, LLC; CREATIVE
ICONS, LLC; and OSCAR LLORD,       :

                    Defendants.    :

--------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR ABATE**

**WILLIAM R. KUTNER, ESQ.**
Attorney for Plaintiffs
SDNY Bar No. WK-4951
57G Stonehurst Boulevard
Freehold, New Jersey 07728
TEL/FAX (732) 252-5372
E-mail:  KutnerLaw@aol.com
          -and-
63-84 Saunders Street
Suite 1-T
Rego Park, New York 11374
TEL (718) 275-8838

# TABLE OF CONTENTS

**Pages**

Table of Authorities . . . . . . . . . . . . . . . . . . . . iii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . 2

    Florida Action . . . . . . . . . . . . . . . . . . . . . . 4

    Florida Motion . . . . . . . . . . . . . . . . . . . . . . 6

    This Action . . . . . . . . . . . . . . . . . . . . . . . . 7

    Removal from Supreme Court, Bronx County . . . . . . . . . . 8

    This Motion . . . . . . . . . . . . . . . . . . . . . . . . 8

    Mediation . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Abiding Determination of Florida Motion . . . . . . . . . . 9

    Our Delay in Opposing This Motion . . . . . . . . . . . . . 10

    September 4, 2009 Deadline . . . . . . . . . . . . . . . . . 10

Sequence of Arguments . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . .

    POINT I -- THE BRANCH OF DEFENDANTS' MOTION
            WHICH SEEKS A "TRANSFER" OF THIS
            CIVIL ACTION TO THE FLORIDA COURT
            LACKS MERIT AND SHOULD BE DENIED . . . . . . . . 12

        A. 28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . 12

        B. Forum Non Conveniens . . . . . . . . . . . . . . . . 13

        C. Transfer to Change Venue . . . . . . . . . . . . . . 14

    POINT II -- THE BRANCH OF DEFENDANTS' MOTION
            WHICH SEEKS TO "ABATE" THIS CIVIL
            ACTION LACKS MERIT AND SHOULD BE
            DENIED . . . . . . . . . . . . . . . . . . . . . 15

    POINT III -- THE BRANCH OF DEFENDANTS' MOTION
            WHICH SEEKS DISMISSAL OF THIS CIVIL
            ACTION IN FAVOR OF THE PRIOR-PENDING
            ACTION IN THE FLORIDA COURT LACKS
            MERIT AND SHOULD BE DENIED . . . . . . . . . . 17

A. Defective Forum Selection Clause . . . . . . . . . . .  17

B. Misleading This Court . . . . . . . . . . . . . . . .  18

    Parties . . . . . . . . . . . . . . . . . . . . . . .  18

    Causes of Action or "Claims" . . . . . . . . . . . .  18

    Progress of Florida Action . . . . . . . . . . . . .  19

    Places of Residence and Business . . . . . . . . . .  19

    "Duplicative" and "Identical" . . . . . . . . . . .  20

    "First-to-File" Rule . . . . . . . . . . . . . . . .  20

    Consolidation Is Not Possible . . . . . . . . . . .  21

    "All" Nonparty Witnesses . . . . . . . . . . . . . .  21

    Florida Law . . . . . . . . . . . . . . . . . . . .  27

    Relative Financial Strengths of Parties . . . . . .  27

    Conflicting Allegations . . . . . . . . . . . . . .  28

    Broad Discretion . . . . . . . . . . . . . . . . . .  29

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . .  30

PLAINTIFF'S EXHIBITS:

  Summons in Florida Action (filed February 6, 2009). . . . .  "1"

  Complaint in Florida Action (filed February 6, 2009) . . . .  "2"

  Summons in this Action (filed June 2, 2009) . . . . . . . .  "3"

  Verified Complaint in this Action (filed June 2, 2009) . . .  "4"

  Purchase Agreement (executed "as of" January 19, 2004) . . .  "5"

  Assignment (executed September 13 and 19, 2007) . . . . . .  "6"

  Order of Florida Court (August 24, 2009) . . . . . . . . .  "7"

CERTIFICATE OF SERVICE . . . . . .  last three pages before "back"

## TABLE OF AUTHORITIES

Pages:

**Cases:**

**Supreme Court:**

American Dredging Co. v. Miller, 510 U.S. 443,
   449 n.2, 114 Sup. Ct. 981, 127 L. Ed. 2d 285
   (1994) . . . . . . . . . . . . . . . . . . . . . . . 13

**Court of Appeals:**

D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d
   95, 106 (CA2 2006) . . . . . . . . . . . . . . . . 29

John Boutari & Son, Wines & Spirits, S.A. v.
   Attiki Imps. & Distribs. Inc., 22 F.3d 51 (CA2 1994) . . . . 5

**District Courts:**

American Steamship Owners Mut. Protection and
   Indemnity Association, Inc. v. Lafarge North
   America, Inc., 474 F. Supp. 2d 474 (S.D.N.Y.
   2007) . . . . . . . . . . . . . . . . . . . . . . . 29

Amini Innovation Corp. v. Collezione Europa
   U.S.A., Inc., 512 F. Supp. 2d 1039, 1042
   (S.D. Tex. 2007) . . . . . . . . . . . . . . . . . 13

Beatie and Osborn LLP v. Patriot Scientific
   Corp., 431 F. Supp. 2d 367 (S.D.N.Y. 2006) . . . . . . . . . 5

Cavu Releasing, LLC v. Fries, 419 F. Supp.
   2d 388, 395 (S.D.N.Y. 2005) . . . . . . . . . . . . . 8

Indian Harbor Ins. Co. v. Factor Mut. Ins. Co.,
   419 F. Supp. 2d 395 (S.D.N.Y. 2005) . . . . . . . . . . 26

Turner v. Hudson Transit Lines, Inc., 724 F.
   Supp. 242 (S.D.N.Y. 1989) . . . . . . . . . . . . . . 27

**New York:**

King v. Kline, ___ A.D.3d ___, ___ N.Y.S.2d ___,
   2009 N.Y. App. Div. LEXIS 6001 (1st Dep't
   2009) . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES (CONTINUED)

Pages:

**Florida:**

McRae v. J.D./M.D., Inc., 511 So. 2d 540,
  542 (Fla. 1987) . . . . . . . . . . . . . . . . . . . . . . 5

**Statutes (Federal):**

28 U.S.C. § 89(c) . . . . . . . . . . . . . . . 14, 14 n.5

28 U.S.C. § 1132(a)(1) . . . . . . . . . . . . . . . . 1, 8

28 U.S.C. § 1404(a) . . . . . . . . . . . . . 8, 12, 13, 14

28 U.S.C. § 1441(a) . . . . . . . . . . . . . . . . . 1, 8

**Statute (New York):**

N.Y. Limited Liability Company Law § 401 . . . . . . . . . . 3

**Federal Rules of Civil Procedure:**

Fed. R. Civ. P. 41 . . . . . . . . . . . . . . . . . . . 9

**Miscellaneous:**

1 Am. Jur. 2d, Abatement, Survival, and
  Revival § 3 (1994) . . . . . . . . . . . . . . . . . 15

Black's Law Dictionary 2 (7th ed. Garner 1999) . . . . . 15, 16

David D. Siegel, New York Practice § 185
  (4th ed. 2005) (Practitioner Treatise Series) . . . . . . . 15

Charles Alan Wright, Law of Federal Courts,
  § 77 (5th ed. 1994) . . . . . . . . . . . . . . . . . . 15

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------X

NEW WORLD BOOKING INC. and       :   09-CIV-5600 (AKH)
MENUDO ENTERTAINMENT LLC,
                                 :

                 Plaintiffs,     :

        -against-                :

OLE, LLC a/k/a OSCAR LORD        :
ENTERTAINMENT, LLC; CREATIVE
ICONS, LLC; and OSCAR LLORD,     :

                 Defendants.     :
--------------------------------X
```

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR ABATE

#### Preliminary Statement

Plaintiffs commenced this civil action in Supreme Court, Bronx County, to recover (1) damages for the breach of a written agreement (first cause of action or "claim"); (2) damages for fraudulent inducement to enter into the written agreement in the first place (second cause of action or "claim"); and (3) collection expenses, including, without limitation, attorneys' fees, pursuant to a written agreement providing for the same upon a breach of such written agreement (third cause of action or "claim").

Defendants removed this civil action from Supreme Court, Bronx County, to this Court on the basis of diversity-of-citizenship and the amount in controversy (28 U.S.C. §§ 1132[a][1], 1441[a]).

Defendants have moved for (1) dismissal of this civil action; or, in the alternative, (2) "transfer" of this civil action to a state court in Florida; or, in the alternative, (3) "abatement" of this civil action.  Plaintiffs oppose Defendants' motion and respectfully submit this Memorandum of Law to assist the Court in the determination of the motion.

### Statement of the Case

"Menudo" is the name of a popular music group.  During April of 2004, but effective as of January 19, 2004, Plaintiff MENUDO ENTERTAINMENT LLC ("ME-LLC"), a New York limited liability company with an office in Bronx County, New York (Pl. Exh. "3" at ¶¶ 9-10), purchased an interest in (1) the "Menudo" trademark, and (2) certain associated "domain names" for Web sites, from Defendant OLE, LLC a/k/a OSCAR LLORD ENTERTAINMENT, LLC ("Ole").  This transaction was the subject of a written agreement entitled "PURCHASE AGREEMENT" (Pl. Exh. "5").  Ole reserved certain rights to itself in the PURCHASE AGREEMENT (e.g., Pl. Exh. "5" at ¶¶ 1.1.4, 1.1.5, 1.1.6, 2.1).  Various rights so reserved have been referred to by the parties as a "residual profit position."

Ole is alleged to be the predecessor-in-interest to Defendant CREATIVE ICONS, LLC ("CI-LLC") with respect to the subject matters of this civil action (Def. Motion at 2, n.1).  Thus, CI-LLC is impliedly alleged to be the successor-in-interest to Ole with respect to such subject matters.

For some time, Defendant OSCAR LLORD ("Llord"), who was originally associated with Ole, and who is now associated with CI-LLC, wanted to liquidate CI-LLC's "residual profit position" (in other words, he wanted ME-LLC to "buy out" the "residual profit position"). Initial discussions between Llord, on the one hand, and principals of ME-LLC, on the other hand, concerning such a proposed "buy out" did not result in an agreement.

JEFFREY WEINER ("Mr. Weiner") and BARRY SOLOMON ("Mr. Solomon") are members of BIG BAR ENTERTAINMENT, LLC ("Big Bar"), a New York limited liability company with an office in Bronx County, New York (Pl. Exh. "3" at ¶¶ 6-7). Big Bar owns a fifty percent (50%) interest in ME-LLC (Pl. Exh. "3" at ¶ 12). Mr. Weiner is the managing member (N.Y. Limited Liability Company Law § 401) of Big Bar (Pl. Exh. "3" at ¶ 8).

Nearly three and one-half years after the parties entered into the PURCHASE AGREEMENT (Pl. Exh. "5"), during September of 2007, in an entirely separate transaction, CI-LLC entered into a separate agreement entitled "ASSIGNMENT" (Pl. Exh. "6") with Mr. Weiner. Pursuant to the ASSIGNMENT (Pl. Exh. "6"), Mr. Weiner -- instead of ME-LLC -- "bought out" CI-LLC's "residual profit position." Acting by and through Mr. Solomon, ME-LLC executed the ASSIGNMENT (Pl. Exh. "6") for certain limited purposes (Pl. Exh. "6" at ¶ 5).

Disputes arose among the parties; as is set forth more fully below, those disputes led to litigation in two states.

**Florida Action**

On or about February 6, 2009, CI-LLC commenced an action (the "Florida Action") against Mr. Weiner and ME-LLC in the Circuit Court of the 11th Judicial District in and for Miami-Dade County, Florida (the "Florida Court").  Copies of the Summons and Complaint in the Florida Action are submitted as Plaintiff's Exhibits "1" and "2," respectively, on this motion.[1]

In the Complaint in the Florida Action (Pl. Exh. "2"), CI-LLC seeks compensatory damages, prejudgment interest, "reversion" (Pl. Exh. "2" at ¶ 25) of certain property rights, and attorneys' fees.[2]

The PURCHASE AGREEMENT contains a peculiar forum selection clause authorizing litigation in both Florida and New York (Pl. Exh. "5" at ¶ 8.8).  Florida law and New York law differ substantially on the enforcement of forum selection clauses.

Under Florida law the mere fact that a written agreement contains a forum selection clause does not necessarily mean that it will be enforced; the clause itself is insufficient to invoke long-

---

[1]We have deliberately omitted the PURCHASE AGREEMENT and the ASSIGNMENT from Exhibit "2" so as to avoid unwarranted duplication. Copies of those documents were also attached to the Verified Complaint in this action (Pl. Exh. "4").  To make it easier for the Court to locate them quickly, each of them is submitted, once, as Plaintiff's Exhibits "5" and "6," respectively, on this motion.  We have also deliberately omitted an alleged default notice that was annexed to the Complaint in the Florida Action as Exhibit "C," because it has no conceivable relevance to this motion.

[2]Although the Complaint in the Florida Action seeks "reversion" (i.e., recovery) of certain property rights (Pl. Exh. "2" at ¶ 25), Defendants' motion refers to "conversion" (Def. Motion ¶ 3). This appears to be an inadvertent error.

arm jurisdiction over a nondomiciliary who interposes a timely objection.   McRae v. J.D./M.D., Inc., 511 So. 2d 540, 542 (Fla. 1987).

Under New York law there is a materially greater likelihood of enforcement.   E.g., Beatie and Osborn LLP v. Patriot Scientific Corp., 431 F. Supp. 2d 367 (S.D.N.Y. 2006) (forum selection clause in law firm retainer agreement providing for litigation in New York enforced against California corporation).

Thus, because Florida law and New York law differ so markedly on this issue, the Florida Court may find that it lacks in personam jurisdiction over Mr. Weiner and/or over ME-LLC, and it may dismiss the Florida Action as against either one or both of them, and yet this Court may ultimately find that the forum selection clause must be enforced against one or more or all three of the Defendants in New York.   This may seem incongruous, but it really is not.   Although the Agreement does select the law of Florida (Pl. Exh. "5" ¶ 8.1), the enforcement of the forum selection clause is a matter of procedure, not substance, and the law of New York should govern that issue in this Court.   John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc., 22 F.3d 51 (2d Cir. 1994) (permissive clause).

The ASSIGNMENT, made in September 2007 (Pl. Exh. "6"), runs from CI-LLC to Mr. Weiner.   It does not incorporate all or any part of the PURCHASE AGREEMENT (Pl. Exh. "6") by express reference or by fair implication.   It does not contain a choice-of-law clause.   It

does <u>not</u> contain a forum selection clause.  It does <u>not</u> state, ex-
pressly or by fair implication, that by signing it Mr. Weiner was
submitting himself to the jurisdiction of the Florida Court.  It
was <u>not</u> executed by Mr. Weiner as a representative of ME-LLC (it
was executed by Mr. Solomon for ME-LLC).  It would be a major
"stretch" to find in the general language of the ASSIGNMENT an
agreement by Mr. Weiner to submit himself to the in personam juris-
diction of the Florida Court.[3]

**Florida Motion**

Mr. Weiner and ME-LLC moved to dismiss the Florida Action for
want of in personam jurisdiction (the "Florida Motion").  The par-
ties engaged in certain disclosure proceedings pertaining to issues
raised on the Florida Motion.  A hearing on the Florida Motion is
now scheduled for September 11, 2009, provided that the parties do
not reach an agreement to compromise and settle their differences

---

[3]Defendants have, in effect, <u>renamed</u> the ASSIGNMENT and called
call it the "Modification Agreement" (Def. Motion ¶ 3).  Perhaps
this was inadvertent, but it places an altogether different "spin"
on reality.  Mr. Weiner purchased some of CI-LLC's interests in the
"Menudo" brand (Pl. Exh. "6") nearly three and one-half years after
ME-LLC purchased other interests in the Menudo brand (Pl. Exh.
"5").  This initial confusion is compounded by the fact that the
two separate agreements are jointly referred to as the "Agreement"
at certain points in the motion (e.g., Def. Motion ¶ 3).  This is
a transparent attempt to distort reality and to fuse them into one
"agreement."  Defendants have no basis for asserting in personam
jurisdiction over Mr. Weiner in Florida, so they are trying to make
the PURCHASE AGREEMENT and the ASSIGNMENT appear to be <u>one</u> "agree-
ment," not two agreements.  Later, by the way, they call it the
"Assignment Agreement" (Def. Memorandum of Law at 4).  Thus, they
have given the ASSIGNMENT at least three new names.

by that time.  We discuss the latter possibility in greater detail
below (see pages 8-10, below).

Although this Court should not attempt to predict how the
Florida Court will determine the Florida Motion, and should instead
abide that event, it is especially noteworthy that Mr. Weiner is
<u>not</u> a party to the PURCHASE AGREEMENT that contains the permissive
forum selection clause (Pl. Exh. "5" at ¶ 8.8).  In fact, it was
not even Mr. Weiner who executed the PURCHASE AGREEMENT for ME-LLC;
it was Gerald N. Brenner of Massachusetts ("Mr. Brenner") who did
so (Pl. Exh. "5" at last page).  Thus, even if the forum selection
clause were to be deemed enforceable as against ME-LLC in Florida,
it simply cannot be enforced against Mr. Weiner.[4]

**This Action**

On June 2, 2009, NEW WORLD BOOKING INC. ("New World"), a New
York corporation with an office in Bronx County, New York (Pl. Exh.
"3" at ¶¶ 1-2), and ME-LLC commenced this civil action against Ole,
CI-LLC, and LLORD in Supreme Court, Bronx County.  Copies of the
Summons and the Verified Complaint are submitted as Plaintiff's Ex-
hibits "3" and "4," respectively, on this motion.  Copies of the
PURCHASE AGREEMENT and the ASSIGNMENT were annexed to the Verified
Complaint in this civil action as Exhibits "1" and "2," respective-

---

[4]Mr. Brenner is a member of GLOBAL ENTERTAINMENT, LLC ("Glo-
bal"), a Massachusetts limited liability company with an office in
Essex County, Massachusetts (Pl. Exh. "3" at ¶¶ 3-5).  Global owns
a fifty percent (50%) interest in ME-LLC  (Pl. Exh. "3" at ¶ 11).
As stated above (see page 3, above), Big Bar owns the other fifty
percent (50%) interest in ME-LLC.

ly, thereto.  For the convenience of this Court, those documents are submitted as Plaintiff's Exhibits "5" and "6," respectively, on this motion.

**Removal**

Defendants removed this civil action to this Court on the basis of diversity-of-citizenship and the amount in controversy (28 U.S.C. §§ 1132[a][1], 1441[a]).

**This Motion**

On or about June 25, 2009, Defendants made the instant motion for dismissal, transfer, or abatement of this civil action.  They did <u>not</u> move for a transfer of the venue of this civil action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).  Had they done so, the forum selection clause, upon which they rely so heavily, would be deemed to be irrelevant.  <u>Cavu Releasing, LLC</u> v. <u>Fries</u>, 419 F. Supp. 2d 388, 395 (S.D.N.Y. 2005).  Moreover, such a transfer, if granted, would still leave <u>two</u> litigations in <u>two</u> Courts, with one still in the Florida Court and one still in a United States District Court (albeit a different United States District Court in different federal judicial district).

**Mediation**

On August 24, 2009, the Florida Court made an order directing the parties to participate in a mediation within 20 days in Miami, Florida.  A copy of that order is submitted as Plaintiff's Exhibit "7" on this motion.  That mediation is scheduled to take place on

-8-

September 10, 2009, and will occur before this motion is submitted for determination (on or after September 15, 2009).  If the mediation is successful, and if the parties agree to compromise and settle their differences, this civil action will be discontinued (Fed. R. Civ. P. 41) and Defendants' instant motion will be moot.

**Abiding Determination of Florida Motion**

If the mediation is not successful, and if the parties do not agree to compromise and settle their differences on September 10, 2009, the Florida Court will hold a hearing on September 11, 2009 on the Florida Motion (made by Mr. Weiner and ME-LLC to dismiss the Florida Action for want of jurisdiction over their respective persons).  If that does occur, this Court should hold this motion in abeyance for a reasonable time to abide a decision of the Florida Court on the Florida Motion.  Defendants agree with our view that this Court should, if necessary, abide the determination of the Florida Motion (Def. Memo. of Law at 10, 11).

If this Court were to decline to abide the decision of the Florida Court on the Florida Motion, the following anomalies might occur:  First, this Court might determine a motion that may never need to be determined (because the dismissal of the Florida Action will make this motion moot).  Second, this Court might dismiss this civil action pursuant to the so-called "first-to-file" rule, only to find that the Florida Court subsequently dismisses the Florida Action, leaving no "prior-pending action" to justify dismissal of this civil action.  This would make little sense in the abstract

-9-

and makes no sense at all since the parties are in agreement on this point.

Ultimately, as we demonstrate in our Argument (below), Defendants' instant motion lacks merit and should be denied in all respects.

**Our Delay in Responding to This Motion**

A few words about our delay in responding to this motion are in order. Defendants' attorneys accommodated three of our four our requests for adjournments of this motion; we are grateful and we thank them again. This Court was lenient in view of the death of a member of our immediate family, the likely death of another member of our immediate family, and the serious medical problems the undersigned suffered during the pendency of this motion; we are grateful for that, too, and we thank this Court again for its patience.

**September 4, 2009 Deadline**

The most recent adjournment specified that these opposition papers would be deemed timely if filed on or before September 4, 2009, and also provided that there would be no further enlargements of time. However, the Court's ECF system became <u>unavailable</u> at some point in the day on September 3, 2009, which was <u>before</u> such deadline. According to the Court's Web site, the ECF system is not scheduled to be available again until September 8, 2009.

Therefore, we are sending hard copies of these papers to Chambers and to Defendants' attorneys by FedEx; we have already sent an

electronic copy of these papers to Defendants' New York attorneys by e-mail; and we will file the electronic version of this submission as soon as the ECF system becomes available again (see Certificate of Service [last three pages before litigation "back"]).

This technical obstacle to electronic filing will result in a delay of no more than <u>one</u> Court-day and is entirely beyond the control of the undersigned.

We <u>consent</u> to any amount of additional time Defendants' attorneys may require to serve and file reply papers, if they wish to do so.

**Sequence of Arguments**

For convenience, we discuss the three alternative branches of the motion in the order of apparent complexity, rather than in the sequence in which they have been presented in the moving papers.

**ARGUMENT**

**POINT I**

**THE BRANCH OF DEFENDANTS' MOTION WHICH SEEKS A
"TRANSFER" OF THIS CIVIL ACTION TO THE FLORIDA
COURT LACKS MERIT AND SHOULD BE DENIED.**

The title of Defendants' Memorandum of Law refers to a "transfer" of this civil action to the Florida Court.  Def. Memo. at 1.  The final paragraph of Defendants' Memorandum of Law also refers to a "transfer" of this civil action to the Florida Court.  Def. Memo. at 11.  A United States District Court is <u>not</u> authorized to effect such a "transfer."  Accordingly, the second branch of Defendants' motion should be denied.

**A. 28 U.S.C. § 1404(a)**

Pursuant to CPLR 28 U.S.C. § 1404(a), "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The final 11 words of subsection "(a)" ("any other district or division where it might have been brought") limits such transfers to districts in which (1) all defendants are subject to in personam jurisdiction, and (2) venue would be proper.

There can be no doubt that 28 U.S.C. § 1404(a) contemplates transfers <u>within</u> the federal judicial system, and there also can be no doubt that it does <u>not</u> authorize a district court to "transfer" a civil action to a court <u>outside</u> the federal judicial system (such as, for example, the Florida Court).

-12-

For this reason alone, Defendants' demand, in the alternative, for a "transfer" this action to the Florida Court lacks merit and should be denied.

## B. Forum Non Conveniens

Defendants' motion does <u>not</u> contain any reference to the doctrine of forum non conveniens.  Nevertheless, it may be helpful to this Court to have authority on the point.

To the extent that a defendant seeks a transfer from one federal district court to another, 28 U.S.C. § 1404(a) has superseded the doctrine of forum non conveniens.  <u>American Dredging Co.</u> v. <u>Miller</u>, 510 U.S. 443, 449 n.2, 114 Sup. Ct. 981, 127 L. Ed. 2d 285 (1994); <u>Amini Innovation Corp.</u> v. <u>Collezione Europa U.S.A., Inc.</u>, 512 F. Supp. 2d 1039, 1042 (S.D. Tex. 2007) (citing authorities).

"[T]he federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad."  <u>American Dredging Co.</u>, 510 U.S. 443, 449 n.2, 114 Sup. Ct. 981, 127 L. Ed. 2d 285.  In other words:  "Only when the more convenient forum is a foreign country can a suit brought in a proper federal venue be dismissed on grounds of forum non conveniens."  <u>Amini</u>, 512 F. Supp. 2d, at 1042 (citing authorities).

Even if Defendants had invoked the doctrine of forum non conveniens, and even if this Court were to have found that doctrine to be available, this Court still would not be able to "transfer" this civil action to the Florida Court.  The most it would be able to do under those circumstances would be to dismiss this civil action or

stay further prosecution of this civil action in contemplation of Plaintiffs' commencement of a <u>new</u> action in the Florida Court.

**C. Transfer to Change Venue**

Defendants have <u>not</u> moved, pursuant to 28 U.S.C. § 1404(a), for a transfer of this civil action to the United States District Court for the Southern District of Florida, which includes Miami-Dade County (28 U.S.C. § 89[c]), and this Court should not grant such relief to them.[5]  Were this Court to do that, nothing useful would be gained, as there would <u>still</u> be two litigations in two different Courts, one federal and one state, which is the present situation.

For these reasons, this Court <u>cannot</u> "transfer" this action to the Florida Court, and it should not transfer this action to the United States District Court for the Southern District of Florida. The second branch of Defendants' motion should be denied.

---

[5]Congress has not enacted an amendment to 28 U.S.C. § 89(c) to reflect the fact that the Florida county formerly known as "Miami" is now known as "Miami-Dade."  Nevertheless, the federal judicial district known as the Southern District of Florida is the district that includes Miami-Dade County.

**POINT II**

**THE BRANCH OF DEFENDANTS' MOTION WHICH SEEKS TO "ABATE" THIS CIVIL ACTION LACKS MERIT AND SHOULD BE DENIED.**

Defendants use the word "abate" and the word "abatement" a number of times in their presentation, but they do not offer any analysis of the law governing the abatement of a civil action.

This civil action is before the Court on diversity of citizenship jurisdiction. Accordingly, New York law governs the matter of abatement. E.g., Charles Alan Wright, Law of Federal Courts, § 77 (5th ed. 1994).

Some causes of action or claims abate upon the death of a party; others may be asserted by the decedent's personal representative. None of the parties to this action has died. Cf. King v. Kline, ___ A.D.3d ___, ___ N.Y.S.2d ___, 2009 N.Y. App. Div. LEXIS 6001 (1st Dep't 2009) (action for divorce and pendente lite relief abated on death of husband because death terminated the marriage). Abatement upon the death of a party is "rare today." David D. Siegel, New York Practice § 185 (4th ed. 2005) (Practitioner Treatise Series).

In addition, there is a difference between an abatement and a stay. "Abatement" may mean the suspension or defeat of a pending action for a reason unrelated to the merits of the claim . . . ." Black's Law Dictionary 2 (7th ed. Garner 1999). In addition:

> "Although the term 'abatement' is sometimes used loosely as a substitute for 'stay of proceedings,' the two may be distinguished on

-15-

> several grounds.  For example, when grounds
> for abatement of an action exist, the abate-
> ment of the action is a matter of right, but a
> stay is granted in the court's discretion.
> And in proper circumstances a court may stay a
> proceeding pending the outcome of another pro-
> ceeding although a strict plea in abatement
> could not be sustained."

Black's Law Dictionary 2 (7th ed. Garner 1999), quoting 1 Am. Jur.

2d, Abatement, Survival, and Revival § 3 (1994).

The subject of abatement is not relevant to the circumstances

presented here.

If Defendants meant their use of the words "abate" and "abate-

ment" to request a stay of further prosecution of this civil ac-

tion, we do not consent, unless such a stay means no more than

abiding the determination of the Florida Motion by the Florida

Court.  Defendants agree with us on this point (Def. Motion at 11).

## POINT III

**THE BRANCH OF DEFENDANTS' MOTION WHICH SEEKS DISMISSAL OF THIS CIVIL ACTION IN FAVOR OF THE PRIOR-PENDING ACTION IN THE FLORIDA COURT LACKS MERIT AND SHOULD BE DENIED.**

### A. Defective Forum Selection Clause

So far as we can determine, <u>none</u> of the cases Defendants cite in support of their invocation of the so-called "first-to-file" rule involved a forum selection clause quite like the unusual, if not unique, forum selection clause in the PURCHASE AGREEMENT (Pl. Exh. "3" at ¶ 8.8).  This clause allows either side to sue the other side <u>in</u> <u>both</u> <u>New</u> <u>York</u> <u>and</u> <u>Florida</u>.  The use of this ill-considered clause did not promote certainty, minimize expense, or avoid having two competing actions in two courts in two different jurisdictions; it pulled the teeth out of the first-to-file rule and sapped it of its raison d'etre.  Plaintiffs have a right under this forum selection clause to sue Defendants in New York (or in Florida if they so choose).  Defendants may -- or may not -- have a right to sue Plaintiffs in Florida; this depends upon the enforceability of the defective forum selection clause under Florida law.  They may sue Plaintiffs in New York, if they so choose, and they may one day do so.

It is plain that if the Florida Court grants the Florida Motion (and appeals are not successful or not taken), CI-LLC will sue Mr. Weiner and/or ME-LLC, as the case may be, again, the next time in New York.

**B. Misleading this Court**

Apart from the inherent defect in the forum selection clause, in an attempt to persuade this Court that the two actions are functionally "identical" (Def. Motion at 10), Defendants mislead this Court.

We do not deny that the Florida Action was filed first.  Yet, these two actions are different in a number of respects.

**Parties**

First, the parties are different.  Mr. Weiner is a defendant in the Florida Action, but he is not a plaintiff in this civil action (Pl. Exhs. "1" through "4").  CI-LLC is the sole plaintiff in the Florida Action, but there are three Defendants in this civil action (Pl. Exhs. "1" through "4").

**Causes of Action or "Claims"**

Second, the causes of action or claims are not the same.  In the Florida Action, CI-LLC seeks money damages for breach of contract, prejudgment interest, "reversion" of the subject properties, and attorneys' fees pursuant to the terms of one of the PURCHASE AGREEMENT (Pl. Exhs. "2," "5," and "6").  In this civil action New World and ME-LLC seek money damages for different breaches of two agreements (i.e., the PURCHASE AGREEMENT and the ASSIGNMENT), fraud in the inducement, and attorneys' fees (Pl. Exh. "4" through "6").[6]

---

[6]Defendants assert that Plaintiffs have not interposed any causes of action or "claims" against Ole (Def. Motion ¶ 4), yet they say that Ole is the predecessor in interest to CI-LLC (Def. Motion 2 n.1).  Plaintiffs do not yet know precisely how and when,

**Progress of Florida Action**

Third, despite being the older of the two cases, the Florida Action has <u>not</u> progressed to the merits.  So far the parties have been doing battle over the jurisdictional issue (i.e., whether Mr. Weiner and ME-LLC can be compelled to defend themselves in Florida), and those disclosure proceedings which have been conducted to date have related to that issue.

**Places of Residence and Business**

Fourth, Defendants point out that Llord resides in Miami-Dade County, Florida (Def. Motion ¶ 7).  This appears to be true, but it identifies only one of the weights on the judicial balance scale.  Limiting this part of the analysis to the parties themselves and to the principals of the parties, this case has heavier contacts with New York and Massachusetts:

 1. New World is a New York corporation with offices in Bronx County, New York (Verified Complaint ¶¶ 1-2);

 2. ME-LLC is owned equally by two entities, one of which, Big Bar, is a New York limited liability company with an office in Bronx County, New York (Verified Complaint ¶¶ 6-8), and one of which, Global, is a Massachusetts limited liability company with an office in Essex County, Massachusetts (Pl. Exh. "3" at ¶¶ 3-4);

---

if at all, CI-LLC allegedly came to succeed Ole, so they cannot be certain that CI-LLC has, in fact, succeeded to Ole's rights and obligations.

-19-

3.  Mr. Weiner resides in Westchester County, New York, and has a place of business in Bronx County, New York (Def. Motion ¶ 11);

4.  Mr. Solomon resides in Westchester County, New York, and has a place of business in Bronx County, New York; and

5.  Mr. Brenner resides in Essex County, Massachusetts, and has a place of business in Essex County, Massachusetts (Verified Complaint ¶¶ 3-4).

**"Duplicative" and "Identical"**

Fifth, in several places Defendants characterize this civil action as "duplicative" (e.g., Defendants' Memorandum of Law 3, 4). We have shown above that this is not so:  The parties differ and the causes of action or claims differ.  They also say that the two actions are "identical" (Def. Memo. of Law at 10).  We have demonstrated that this is plainly not so.

**"First-to-File" Rule**

Sixth, as Defendants admit, the first-to-file rule is not rigid and there are other factors to be considered (Defendants' Memorandum of Law at 4).  Competition for the "home court advantage" often occurs in patent litigations.  An infringement is claimed and the party accused of infringement "races to the courthouse" to file a declaratory judgment action in a preferred forum.  Such cases are materially different from this case.  Neither "side" is seeking declaratory relief against the other, but each has a preferred forum:  For Plaintiffs it is New York; for Defendants it is Florida.

**Consolidation Is Not Possible**

Seventh, one of the remedies for truly duplicative lawsuits is consolidation (Defendants' Memorandum of Law at 4). As we have already observed, consolidation is simply not possible here because one case is pending in a state court, one case is pending in a federal court, and the two cases are in two different states.

**"All" Nonparty Witnesses**

Eighth, Defendants maintain that "all" nonparty witnesses reside in Florida (Def. Memo. of Law at 6).[7] As we show below, this is plainly false. The following is a list of Plaintiffs' witnesses and the anticipated substance of the testimony each will give in New York:

> (1) Mr. Weiner, who resides in Westchester County, New York, and has a place of business in Bronx County, New York, has been personally involved with "Menudo" and with Llord, in one way or another, since 1999 (a period of at least 10 full years. He has personal knowledge of, and will testify concerning, virtually all aspects of this controversy.

> (2) Mr. Solomon, who resides in Westchester County, New York, and has a place of business in Bronx County, New York, has been personally involved with "Menudo" and with Llord, in one way or another, since 1999 (a period of at least 10 full years. He has personal knowledge of, and will testify con-

---

[7]Defendants actually refer to "new party witnesses," but this appears to be an inadvertent error (Def. Memo. of Law at 8-9).

cerning, virtually all aspects of this controversy.  There were only a few occasions on which Mr. Weiner and Mr. Brenner met with Llord, but Mr. Solomon did not attend.

(3) Mr. Brenner has been intimately involved in virtually all aspects of the subject transactions for at least five and one-half years (and perhaps more than that).  He has personal knowledge of, and will testify concerning, virtually all aspects of this controversy.

(4) MAGGIE LANGE, ESQ. ("Attorney Lange") is Mr. Brenner's attorney.  Attorney Lange practices law in Boston, Massachusetts; she negotiated and drafted the PURCHASE AGREEMENT.

(5) OSCAR RIVERA ("Mr. Rivera") resides in Bronx County, New York, and has a place of business in Bronx County, New York.  He attended most of the meetings between the principals of these parties because he handles graphic design work for New World and ME-LLC.  He has personal knowledge of representations Llord made to Mr. Weiner, Mr. Solomon, and/or Mr. Brenner on various occasions.

(6) CHARLIE WALK ("Mr. Walk") resides in New York, New York, and has a place of business in New York, New York.  We anticipate that Mr. Walk will testify that he was President of EPIC Records (which is now part of SONY Music); that he told Mr. Weiner, Mr. Solomon, and/or Mr. Brenner that Llord was a "crook," and that EPIC Records and SONY Music would not do business with ME-LLC if Llord had any involvement.

-22-

(7) KEVIN LOWRY ("Mr. Lowry") resides in New York, New York, and has a place of business in New York, New York.  Mr. Lowry is president of SONY Music's Latin division; he stated to Mr. Weiner, to Mr. Solomon, and/or to Mr. Brenner that SONY Music would not do business with ME-LLC if Llord were anywhere near the project.

(8) JOHN STUART ("Mr. Stuart") resides in Bergen County, New Jersey.  Mr. Stuart has served as the road manager for Menudo; he is a witness to one or more statements made by Mr. Walk to the effect that EPIC Records and SONY Music would not do business with ME-LLC if Llord had any involvement.

(9) JULIE R. RAPPAPORT, ESQ. ("Attorney Rappaport") is a business affairs lawyer employed by SONY Music in New York, New York.  Attorney Rappaport drafted a rider to an agreement between SONY Music and ME-LLC to exclude Llord from any participation in ME-LLC.  We anticipate that Attorney Rappaport also has personal knowledge of claims made by DARREN McGILLIS ("Mr. McGillis"), a third party, regarding alleged infringement of the "Menudo" trademark and/or his alleged rights to some aspects of the "Menudo" trademark.

(10) JEFF WALKER, ESQ. ("Attorney Walker") is or was SONY Music's head of business affairs and is or was Attorney Rappaport's supervisor.  We anticipate that his knowledge will be similar to Attorney Rappaport's knowledge of the refusals of

EPIC Records and SONY Music to do business with ME-LLC unless Llord were to be completely excluded.

(11) ROBERT ADOVASIO, who resides in Westchester County, New York, witnessed a meeting in Bronx County, New York, between Llord and Mr. Weiner, Mr. Solomon, Mr. Rivera, and one or more other individuals, during which Llord attempted to persuade the principals of ME-LLC "buy out" his "residual profit position."

(12) JOHN MANDY ("Mr. Mandy"), resides in Bronx County, New York, and has a place of business in Bronx County, New York. Mr. Mandy is the manager of Seashore Restaurant on City Island in Bronx County, New York; he was introduced to Llord when Llord met with Mr. Weiner, Mr. Solomon, Mr. Rivera, Mr. Adovasio, and one or more other individuals, for lunch at Seashore Restaurant on City Island in Bronx County, New York, for the purpose of attempting to talk the principals of ME-LLC into "buying out" his "residual profit position."

(13) JEFF COHEN, ESQ. ("Attorney Cohen") has offices in Arlington, Virginia, and is admitted to practice in New York (and various additional state and federal jurisdictions). Attorney Cohen represents ME-LLC for all trademark matters and he advised ME-LLC's principals in connection with claims made against Ole, CI-LLC, and/or Llord in connection with the "Menudo" trademark by Mr. McGillis.

-24-

(14) BARBARA MOY ("Mrs. Moy"), resides in Westchester County, New York.  Her son has been a member of Menudo.  Mrs. Moy informed the principals of ME-LLC of problems created by Mr. McGillis, a third party who placed scurrilous accusations of child abuse and other misconduct concerning the management of the "Menudo" music group on various Web sites (including Wikipedia).

(15) JOSEPH WEINHOLTZ ("Mr. Weinholtz") resides in Nassau County, New York, and has a place of business in New York County, New York.  Mr. Weinholtz, the general manager of Radio Disney, has handled promotional opportunities for the "Menudo" music group (such as appearances at theme parks and on a Disney Christmas television special), and has personal knowledge of damage Mr. McGillis inflicted on ME-LLC.  In addition, he also has personal knowledge of Llord's fraudulent activities and the adverse impact those activities have had on ME-LLC's relationship with Disney.

(16) DAVID MARINOFF ("Mr. Marinoff") has a place of residence in Connecticut and a place of business in Connecticut.  Mr. Marinoff was present at a meeting during 1999 during which Llord claimed that he paid $750,000 for the "Menudo" trademark.  The principals of New World and ME-LLC used that figure as a benchmark for placing a value on that trademark.

(17) ADAM GRANITE ("Mr. Granite") has a place of residence in New York County, New York, and a place of business in

New York County, New York.  Mr. Granite, general manager of EPIC Records, is ME-LLC's day-to-day contact person at EPIC Records.  He has personal knowledge of the claims made by Mr. McGillis.  He also has personal knowledge of the fact that Llord wrote to SONY Music and stated, in substance, that ME-LLC and/or Mr. Weiner owed a payment to Ole and/or to CI-LLC, and that he might bring an action to recover damages and to seek the return of the "Menudo" trademark.  Llord's purpose in sending such letter was to damage ME-LLC's relationship with SONY Music.  SONY Music offered to put up the $150,000 in is-sue on behalf of ME-LLC because it did not want to work with Llord.

(18) CATHY CALEGARI ("Ms. Calegari") has a place of residence in New York County, New York, and a place of business in New York County, New York.  Ms. Calegari was an independent publicist hand-ling all public relations matters for ME-LLC.  She has personal knowledge of the impact of actions in which Mr. McGillis engaged.

With this long list of witnesses, 15 of whom are nonparty wit-nesses, the Court should look to the "center of gravity" of the litigation.  Indian Harbor Ins. Co. v. Factor Mut. Ins. Co., 419 F. Supp. 2d 395 (S.D.N.Y. 2005) (internal quotation marks deleted).

The convenience of nonparty witnesses should be given greater weight than the convenience of the representatives of the parties themselves.  Id.

**Florida Law**

Ninth, Defendants maintain, in substance, that the need to apply Florida law will present an insurmountable problem to this Court.  This is not so.  The causes of action and likely defenses are not exotic or unusual.  The issues are alleged breaches of contracts, alleged fraud in the inducement to enter into one of the contracts in the first place, and attorneys' fees.  No showing has been made that Florida's laws on such "garden variety" claims will be different from New York's laws on such subjects.  A choice-of-law issue usually implies some conflict-of-laws, but no such conflict-of-laws has been identified by Defendants in support of this motion.

In <u>Turner</u> v. <u>Hudson Transit Lines, Inc.</u>, 724 F. Supp. 242 (S.D.N.Y. 1989), Judge Leisure said "Defendants' other basis for transfer is that New Jersey law will apply.  This is an insignificant factor in deciding transfer motions" [external citation omitted].  Defendants say that the standards for transfer motions are the same as the standards for application of the first-to-file rule (Def. Motion at 7).

**Relative Financial Strengths of Parties**

Tenth, there is no proof that the parties have materially different financial abilities to prosecute and defend this civil action or that Plaintiffs have some distinct advantage.  As alleged in Plaintiff's pleading, Llord was an executive with SONY Music; he claimed to be "the 'most powerful Latin music industry executive'

in this country"; and, although the damages alleged in this action are not "astronomical," they certainly are not insubstantial (Def. Mot. at ¶ 5; Verified Complaint ¶¶ 49-54).

### Conflicting Allegations

Eleventh, Mr. Weiner flatly and squarely contradicts assertions made by Llord and others in support of the motion (Def. Exh. "A" to motion).  One side maintains that the locus of operative facts is Florida; the other side maintains that it is New York and Massachusetts.  Such conflicting allegations cannot be resolved on papers; they require a hearing at which witnesses can be cross-examined and their credibility can be assessed.  If the parties do not compromise and settle as a result of the upcoming mediation process in Florida, the Florida Court will conduct a hearing for that purpose and we will promptly notify this Court of the disposition of such proceedings.

It also bears note that Mr. Weiner's affidavit (Def. Motion Exh. "A") demonstrates that he did <u>not</u> enter Florida to avail himself of the benefit of doing business with Ole, CI-LLC, and/or Llord.  He describes being in Florida to conduct <u>other</u> business (Def. Motion Exh. "A" at ¶ 7).  The invocation of a long-arm statute entails a direct and proximate nexus between the activities in the jurisdiction and the alleged cause of action or claim.  This is "Civil Procedure 101."

Further, Mr. Weiner, who has close relatives in Florida, describes a situation in which he entered Florida to <u>vacation</u>, and

-28-

Llord and Llord's attorney, MARC STOLLMAN, ESQ. ("Attorney Stoll-
man"), asked for permission to stop by (Def. Exh. Exh. "A" at ¶ 8).

Mr. Weiner also described a meeting with Llord (1) that took
place in Florida several years before the time frame of the trans-
actions which are the subject of this controversy, and that was for
other business purposes (Def. Exh. "A" at ¶ 6).  Such entry in to
Florida is irrelevant to the determination of this motion.  It is,
in any event, a matter for the Florida Court to consider on the
Florida Motion.

**Broad Discretion**

Twelfth, the first-to-file rule is not always entitled to
great weight.  American Steamship Owners Mut. Protection and Indem-
nity Association, Inc. v. Lafarge North America, Inc., 474 F. Supp.
2d 474 (S.D.N.Y. 2007).  A United States District Court has "broad
discretion in determining whether a transfer is warranted, and the
factors of convenience and fairness are considered on a case-by-
case basis."  Id., citing D.H. Blair & Co., Inc. v. Gottdiener, 462
F.3d 95, 106 (CA2 2006).

**CONCLUSION**

For reasons stated herein, the motion should be held in abeyance pending advice from counsel as to whether the September 10, 2009, court-ordered mediation in Florida has produced a compromise and settlement; and, if not, held in abeyance pending advice from counsel as to the Florida Court's resolution of the jurisdictional issues; if there is a settlement, this civil action will be discontinued and there will be no need for the Court to determine this motion; alternatively, if there is no settlement, but the Florida Court dismisses the Florida Action, there will be no "prior-pending action" and, again, it will not be necessary for this Court to determine this motion; if there is no settlement and the Florida Court does not dismiss the Florida Action for lack of in personam jurisdiction, only then will it be necessary for this Court to determine this motion; and it should be DENIED in all respects.

Dated:  Freehold, New Jersey
        September 4, 2009

                              **WILLIAM R. KUTNER, ESQ.**
                              Attorney for Plaintiffs

                    **By:** _____
                              **William R. Kutner, Esq.**
                              **SDNY Bar No. WK-4951**
                              57G Stonehurst Boulevard
                              Freehold, New Jersey 07728
                              TEL/FAX (732) 252-5372
                              E-mail: KutnerLaw@aol.com
                                      -and-
                              63-84 Saunders Street
                              Suite 1-T
                              Rego Park, New York 11374
                              TEL (718) 275-8838

-30-

### CERTIFICATE OF SERVICE

I was <u>unable</u> to file an electronic version of my papers on September 4, 2009, because the Court's ECF system went offline some time on September 3, 2009.  For several days the Court's Web site has contained a notice that the ECF system will be up and running on September 8, 2009.  I will, therefore, file an electronic version of this Memorandum of Law today.

In the meantime, I hereby certify that I have caused a courtesy copy of this Memorandum of Law to be sent to the Court's Chambers via FedEx on Tuesday, September 8, 2009; and a service copy of my papers to be sent to Defendants' New York attorneys, CAPLAN & ROSS, LLP, 100 Park Avenue, 18th Floor, New York, New York 10017, via FedEx on the same date.  I also hereby certify that I caused a copy of the same to be sent to Defendants' attorney, JONATHAN J. ROSS, ESQ., of CAPLAN & ROSS, LLP via e-mail on this date.

I ask the Court to recognize that I have no control over the Court's ECF system and no control over the fact that it was out of service beginning on September 3, 2009, which was one day <u>before</u> the current deadline.  The delay amounts to one Court-day, during which time the system was unavailable.

Dated:  Freehold, New Jersey
        September 8, 2009

_____
    **WILLIAM R. KUTNER, ESQ.**

UNITED STATES DISTRICT COURT          FILE NO. 09-CIV-5600 (AKH)
SOUTHERN DISTRICT OF NEW YORK

---

NEW WORLD BOOKING INC. and MENUDO ENTERTAINMENT LLC,

                                         Plaintiffs,

                    -against-

OLE, LLC a/k/a OSCAR LLORD ENTERTAINMENT, LLC; CREATIVE
ICONS, LLC; and OSCAR LLORD;

                                         Defendants.

---

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR ABATE

---

WILLIAM R. KUTNER, ESQ.
Attorney for Plaintiffs
57G Stonehurst Boulevard
Freehold, New Jersey 07728
TEL/FAX (732) 252-5372
E-mail:  KutnerLaw@aol.com
-and-
63-84 Saunders Street
Suite 1-T
Rego Park, New York 11374
TEL (718) 275-8838